IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| **RICHARD A. HAGAN**, | ) | |
| | ) | No. 07-10180-01-08 WEB |
| **BRIAN P. RENNEISEN** , a/k/a BRIAN MEADOWS, | ) ) | |
| | ) | |
| **JOHN R. PERSAUD**, a/k/a JOHN CASMERE, a/k/a JOHN KASHMIRE, and | ) ) ) | |
| | ) | |
| **MARVIN R. HICKS** | ) | |
| _____ | ) | |

## <u>Memorandum and Order</u>

The court previously found that this case was complex for purposes of the Speedy Trial Act. The jury trial is scheduled for September 15, 2009.

The Third Superceding Indictment was filed in this case on August 20, 2008. On September 4, 2009, the Government moved to dismiss specific counts of the indictment. The remaining counts of the indictment charge the remaining defendants as follows:

- Count 1: Charges Mr. Hagan, Mr. Renneisen, Mr. Persaud, and Mr. Hicks with Conspiracy to Commit Wire Fraud

- Counts 3, 5, 7, 9, 11, 14 & 15: Charge Mr. Hagan, Mr. Renneisen and Mr. Persaud with Wire Fraud–Faxed Transmissions

- Counts 17 - 20: Charge Mr. Hagan, Mr. Renneisen, Mr. Persaud, and Mr. Hicks with Wire Fraud–Telephone Calls

- Counts 23 - 34: Charge Mr. Hagan, Mr. Renneisen, and Mr. Persaud with Mail Fraud

- Count 35: Charges Mr. Hagan, Mr. Renneisen, and Mr. Persaud with Money Laundering Conspiracy

- Counts 38-45 & 47: Charge Mr. Persaud with Money Laundering

- Counts 48 & 50 - 60: Charge Mr. Renneisen with Money Laundering

- Counts 61 - 66: Charge Mr. Hagan with Monday Laundering

The Court held a Motion Hearing on all pending motions on August 31, 2009 and September 1, 2009.  After a thorough review of the briefs, examination of the law, and hearing oral arguments, the Court makes the following findings.

**Defendant Cheri Persaud's Motion to Join Co-Defendants' Motions** (Doc. 199)

Ms. Persaud has filed a motion to join in motions filed by her co-defendants. Subsequently, Ms. Persaud withdrew this motion, as well as her other pending pre-trial motions, stating that she had reached a plea agreement with the Government.  (Doc. 245).

Accordingly, the Court finds that this Motion (Doc. 199) is now MOOT.

**Defendant Brian Renneisen's Motions to Join (Docs. 191 & 201)**

Mr. Renneisen's first Motion to Join was filed on June 24, 2009 requesting to join in Ms. Persaud's Motion for Severance of Defendant Hicks and the Motion *In Limine* to Exclude Co-Conspirator Hearsay and for Pretrial James Hearing (Docs. 189 and 188).  The second Motion to Join was filed on July 7, 2009 and requests to join in any relevant motions filed by co-defendants.  The Government filed a response stating that it has no objection.

Seeing no objections, the Court GRANTS the motions (Docs. 191 & 201).

2

**<u>Defendant John Persaud's Motion for Production of Jencks Material In Advance of Trial</u>**

**<u>(Doc. 198)</u>**

Mr. Persaud has filed a motion requesting that the Court order the government to produce witness statements and grand jury testimony in advance of trial.  Mr. Persaud acknowledges that Federal Rules of Criminal Procedure 26.2 and 18 USC 3500 indicate that the government is not required to produce the statements of witnesses who testify on the government's behalf until the conclusion of direct examination.

However, Mr. Persaud contends that production of these materials at trial or even shortly before the trial will substantially impair his ability to adequately defend himself and prepare an effective cross-examination.  He further contends that effective assistance of counsel required a degree of preparation that is not afforded by a strict adherence to the Jencks Act.

The Government has filed a response to Mr. Persaud's motion, and contends that the government has already provided the defendants with not only the documents it intends to introduce in its case-in-chief, but all documents in its possession concerning those transactions, including any statement in its possession from the Kansas victims.  In addition, the Government discloses that it has also produced statements of the Kansas victims not identified in the indictment, as well as statements of victims who do not reside in the State of Kansas.  The Government further contends that it follows a practice of providing defense counsel with such Jencks material on the Friday prior to trial and plans to do so in this case.

In spite of this early production, the Government contends that the Court has no authority to grant Mr. Persaud's motion at this time.

<u>Rules & Authority</u>

The Jencks Act provides: "In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case." 18 USC §3500.

Further, the United States Supreme Court held in *Degen v. United States* that "a criminal defendant is entitled to rather limited discovery, with no general right to obtain the statements of the Government's witnesses before they have testified." 517 U.S. 820, 825-26 (1996).

<u>Conclusion</u>

At the hearing, counsel for the Government came to an agreement with counsel for the defendants on the production of Jencks material prior to trial.  Since counsel have come to an agreement, the Court finds that the Motion for Production of Jencks Material (Doc. 198) is MOOT.

**Defendants Mr. Hagan, Mr. Renneisen, and Mr. Persaud Motion to Exclude Indictment from the Jury Room (Doc. 202)**

The Defendants rely on *United States v Redcorn,* a 10th Circuit case from 2008 that held that "where the indictment quotes the language of a statute and includes the date, place, and nature of the illegal activity it need not go further and allege in detail the factual proof that will be relied upon to support the charges."  The Defendants contend that the Indictment here goes further and alleges in great detail the proof that the Government will rely on to support the allegations in the Indictment.

The Defendants contend that permitting the Indictment in the jury room would be similar

to allowing a government attorney in jury deliberations.

The Government has filed a response citing both routine within this District and binding authority regarding the practice of reading or summarizing indictments for the jury at the beginning of trial.  The Government contends that providing the jury with a copy of the Indictment at the conclusion of the case will assist the jury in considering the evidence and provide them with some context by which to evaluate the evidence.

Rules & Authority

It is within the discretion of the Court to prohibit the jury from receiving a copy of the Indictment.  *Wall v. United States,* 384 F.2d 758, 763 (10th Cir. 1967).   Whether an indictment is allowed into the jury room is within the sound discretion of the court. *United States v. Skolek,* 474 F.2d 582, 586 (10th Cir. 1973).  As long as the trial court explicitly instructs the jury that the indictment is not evidence, there is no error.  *United States v. Deters,* 184 F.3d 1253, 1257 (10th Cir. 1999).

"It is common practice to read the indictment to the jury." *United States v. Scott,* 37 F.3d 1564, 1576 (10th Cir. 1994).  It is not error for a trial court to read the indictment to the jury as part of a court's instructions if the jury is also instructed that the indictment is not evidence.  *Id.*

Conclusion

While the Court recognizes that it has discretion in his matter, at the motion hearing counsel for the Government and counsel for the defendants agreed to make a good faith effort to jointly summarize the Indictment and submit it to the Court for review.  Any such agreement should be submitted to the Court in writing prior to the Status Conference on September 10, 2009 at 10:00 a.m.  Accordingly, the Court DEFERS ruling on the Joint Motion to Exclude the

Indictment from the Jury Room (Doc. 202) until it can be determined whether the parties can come to an agreement.

**<u>Defendant Renneisen's Motion to Strike Alias from Indictment (Doc. 203)</u>**

Mr. Renneisen contends that the alias "Brian Meadows" is not necessary to identify him and further contends that it has not been proven to connect him with the  acts alleged in the indictment–and therefore, inherently prejudicial surplusage.

Mr. Renneisen relies on Federal Rules of Criminal Procedure 7(d) which states that "the court on motion of the defendant may strike surplusage from the indictment or information."

The Government has filed a response to Mr. Renneisen's motion and contends that the evidence in the case comes from many different sources–some of which will only recognize the defendant's alias.  The Government submits that the evidence will establish that the defendants would provide victims with names of "references" (aliases) and evidence will show that the phone number given to the victim is actually that of the defendant.  The Government therefore contends that the alias is not surplusage, but necessary for identification purposes.

The Government concedes that if it fails to demonstrate either the defendant's use of the alias or the relevance of the alias in proving the crimes charged in the indictment, the defendant may then renew his motion to strike and the Court may strike the alias and instruct the jury accordingly.

<u>Rules & Authority</u>

A "motion to strike surplusage should be granted only if it is clear that the allegations are not relevant to the charge and are inflammatory and prejudicial." *United States v. Ailsworth,* 87 F.Supp. 1450, 1457 (D.Kan. 1994).   A court has discretion to strike allegations from an

indictment if the court determines the allegations "are both independent of and unnecessary" to the offense charged.  *United States v. Brooks,* 438 F.3d 1231, 1237 (10th Cir. 2006).

Aliases may be used when the government intends to introduce evidence of an alias and the use of that alias is necessary to identify the defendant in connection with the acts charged in the indictment.  *United States v. Skolek,* 474 F.2d 582, 586 (10th Cir. 1973).

Conclusion

The Court cannot find that the alias is irrelevant to the charge or that it is inflammatory and prejudicial.  While the Court has discretion to strike allegations if they are independent of and unnecessary to the offense, here, the Government has established that the alias is necessary for purposes of identification of the defendant as allowed in *United States v. Skolek*.  Therefore, the Motion to Strike the Alias from the Indictment (Doc. 203) is DENIED.

**Defendant John Persaud's Motion to Sever Count 75 of the Indictment for a Separate Trial (Doc. 208)**

Since the Court has granted the Government's Motion to Dismiss (Doc. 260), which includes a dismissal of Count 75, Mr. Persaud's Motion to Sever Count 75 is now MOOT.

**Defendants Mr. Hagan, Mr. Renneisen, Mr. Persaud, and Ms. Persaud's Joint Motion to Strike Surplusage (Doc. 200)**

The Movants rely on Federal Rule of Criminal Procedure 7(d) and request the Court to strike the surplusage in the Indictment as follows:

- paragraphs 1-23 and 26-40 regarding the conspiracy to commit wire fraud

- paragraphs 41-109 regarding the allegations of wire and mail fraud

- paragraphs 118 and 119 of Count 35 which alleges a money laundering

7

conspiracy involving all of the movants

- paragraphs 120 and 121 of Count 36 which alleges a money laundering conspiracy involving all of the movants

- paragraphs 130-153 of Count 75 which also alleges a money laundering conspiracy involving Mr. Persaud and Ms. Persaud

The Movants rely on *United States v. Redcorn* and submit that "where the indictment quotes the language of the statute and includes the date, place, and nature of the illegal activity, it 'need not go further and alleged in detail the factual proof that will be relied upon to support the charges.'"  2008 WL 2332005 (10th Cir. 2008).

The Movants contend that the indictment contains unnecessary details which are "designed to outline the government's theory of its case, in a manner that more closely resembles and opening statement, or closing argument than a charging document."  The Movants submit that the "introduction" contains quotations from, and references to, documents the government hopes to admit into evidence.

The Movants contend that the details set out in the Indictment do not contain any "essential facts" and contain "opinion and hearsay testimony which would not be admissible at trial without violating the defendants' 6th Amendment right to confront their accusers, and without the cautionary instruction which would be necessary if the evidence were not excluded entirely."

The Government has filed a response to the motion and contends that each allegation which the movants seek to strike is either an allegation describing and essential element of the offense or is some other way relevant to the offenses charged.   The Government submits that the

8

"background" allegations are incorporated by reference into specific Counts to which they relate and in many instances describe the elements of the offense and in all other instances are relevant to the offenses charged.

As to Count 1, the Government indicates that movants request the court to strike every allegation related to Count 1 except for the statutory language in paragraph 24 and the conspiracy's time frame in paragraph 25.  Since the conspiracy charged is in violation of 18 U.S.C. §371, the Government contends that merely charging the statutory language is insufficient.

As to Counts 2-15 which charge the movants with wire fraud, the Government contends that an element of which is a scheme or artifice to defraud.  As an element of the offense, the scheme or artifice to defraud "must be described with particularity and... 'it is not sufficient in this regard to merely plead the statutory language.'  It is necessary that the 'nature of the schemes or artifices is identified or described, including the particular pretenses, representations or promises claimed to have been false.'"  *United States v. Schuler,* 458 F.3d 1148, 1152 (10th Cir. 2006).   Accordingly, the Government submits that the allegations in paragraphs 1-109 describe the artifice or scheme to defraud and are therefore properly included pursuant to Rule 7(b).

With regard to Counts 35 and 36 which charge a money laundering conspiracy in violation of 18 U.S.C. §1956(h), the government concedes that since they are not conspiracies under §371 they need not allege a manner and means or the conspiracy nor the overt acts.  Each count contains two paragraphs, and include paragraphs 118-121.  The Government contends that the Defendants' motion is actually a motion to dismiss Counts 35 and 36 because it requests the

Court to strike all of the paragraphs contained therein, but the Defendants offer no legal or factual support for such a dismissal.

<u>Rules & Authority</u>

Under Rule 7(d) of the Federal Rules of Criminal Procedure, "upon the defendant's motion, the court may strike surplusage from the indictment or information."  "This rule introduces a means of protecting the defendant against immaterial or irrelevant allegations in an indictment or information, which may, however, be prejudicial."  *United States v. Smith,* 941 F.Supp. 985, 991-92 (D.Kan 1996) (quoting Notes of Advisory Committee on Rules, 1944 Adoption, Noted to Subdivision [d]).

"It is held that a motion to strike surplusage should be granted only if it is clear that the allegations are not relevant to the charge and are inflammatory and prejudicial."  *United States v. Ailsworth,* 873 F.Supp. 1450, 1457 (D.Kan. 1994)(quoting 1 Charles A. Wright, Federal Practice and Procedure §127 [1982]).

The Court has discretion to strike allegations from an indictment if the court determines the allegations "are both independent of and unnecessary" to the offense charged.  *United States v. Brooks,* 438 F.3d 1231, 1237 (10th Cir. 2006).

An allegation in the indictment which describes "the essential elements of the crime alleged is not surplusage and cannot be striken under Rule 7(d)."  *United States v. Collins,* 920 F.2d 619, 631 (10th Cir. 1990).

In charging conspiracy, it is sufficient if the information or indictment follows the statutory language <u>and</u> contains an adequate statement of an overt act to effectuate the object of the conspiracy.  *United States v. Sterkel,* 430 F.2d 1262, 1263; *see* 18 U.S.C. §371.  Further,

"the requisite overact need not be criminal in itself."  *United States v. Watson,* 594 F.2d 1330, 1341 (10th Cir. 1979).

<u>Conclusion</u>

At the Motion Hearing on August 31, 2009, the parties agreed to consult and attempt to resolve these issues amongst themselves.  The Court will continue to allow them to do so.  Any such agreement should be submitted to the Court in writing prior to the Status Conference on September 10, 2009 at 10:00 a.m.  Accordingly, the Court DEFERS ruling on the Joint Motion to Strike Surplusage (Doc. 200) until it can be determined whether the parties can come to an agreement.

**<u>Defendant Ms. Persaud's Motion for Severance of Defendant Hicks (Doc. 189)</u>**

The Court notes that although Ms. Persaud has withdrawn her Motion to Sever Defendant Hicks, Mr. Renneisen has joined in the motion.  Accordingly, the Court  will consider it.  The Motion to Sever Defendant Hicks contends that Mr. Hicks is representing himself in a "bizarre fashion", along the lines of a traditional tax-protestor, making arguments that the UCC absolves the Court of jurisdiction to try him, and that he has caused protracted delays in the proceedings and intends to pursue a line of defense that none of the remaining defendants plan to pursue. Movants further contend that since some of the defendants have retained attorneys, the costs will be increased if they are forced to endure a trial alongside Mr. Hicks.  Movants submit that their defenses will be compromised if the jury sees them as "somehow tied to Mr. Hicks."

Movants contend that since Mr. Hicks in untrained in law, and will have the right to question witnesses, the likelihood of error will be increased.  Finally, they submit that the interests of judicial economy will be furthered by severing Mr. Hicks since the trial will be able

11

to proceed "in an orderly, understandable fashion unimpeded by bizarre legal arguments."

The Government has filed a response to Defendants' motion contending that Rule 8 is to be construed "broadly 'to allow liberal joinder to enhance the efficiency of the judicial system.'" *United States v. Caldwell,* 560 F.3d 1202, 1212 (10th Cir. 2009). The test for proper joinder "'is a common thread to each of the defendants,' which 'may be established by common evidence as to various counts.'" *Id.* The Government contends that there are numerous common threads alleged in the indictment and the government's evidence will consist of common evidence against the respective defendants.

The Government submits the following:

- Count 1 alleges all of the named defendants engaged in the same conspiracy. This conspiracy established a common thread to all of the defendants, and although some evidence will be different, there will also be evidence which is common to all defendants.

- Counts 17-20 allege that Mr. Hagan, Mr. Renneisen, Mr. Persaud, Mr. Smoker, and Mr. Hicks violated the wire fraud statute either are a principal or as an aider and abetter, and there will be much common evidence.

The Government contends that Rule 14(a) permits severance only if a defendant is prejudiced by the joinder. *See also, United States v. Caldwell,* 560 F.3d 1202, 1213 (10th Cir. 2009).

The Government contends that the movants have failed to show that the inclusion of Mr. Hicks will result in actual prejudice nor have they shown any specific trial right which would be compromised. The Government suggests that the movants' concern is about a possible spillover

12

effect and that she would have a *better chance* of acquittal if Mr. Hicks were severed–which the Government submits is insufficient and not an actual showing of prejudice.

Finally, the Government contends that since this Court has previously ordered, at a hearing on June 22, 2009, that Mr. Hicks will not be able to introduce any evidence about or comment upon the "defenses" mentioned in the Motion, defendants will not be prejudiced.

<u>Rules & Authority</u>

The United States Supreme Court has held that while mutually exclusive defenses are not per se prejudicial, severance should be granted if there is a serious risk that a joint trial would compromise a specific trial right of a properly joined defendant or prevent the jury from making a reliable judgment about guilt or innocence.  *Zafiro v. United States,* 506 U.S. 534 (1993).

Severance is to only be ordered "when there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgement about guilt or innocence."  *Id.* (quoting *United States v. Zapata,* 546 F.3d 1179, 1191 (10th Cir. 2008)).

"The prejudice standard requires a showing of actual prejudice, not merely a showing that a defendant 'may have a *better chance* of acquittal in separate trials.'"  *Id.* (quoting *United States v. Pursley,* 474 F.3d 757, 766 (10th Cir. 2007).

<u>Conclusion</u>

Upon review of the briefs and after hearing oral arguments, the Court finds that the movants have not met their burden of showing actual prejudice if Defendant Hicks is not severed from the trial.  Absent such a showing and in view of the detailed instructions the Court has given Mr. Hicks on the record in open Court, Mr. Hicks has previously been instructed that he

13

will not be permitted to make frivolous or irrelevant arguments at trial.  Mr. Hicks understands these instructions and has agreed to abide by them.  Given the Court's instructions and the movants' lack of showing of actual prejudice, the Motion to Sever Defendant Hicks (Doc. 189) is DENIED.

**Ms. Persaud's Motion to Release Lien on Home (Doc. 192)**

The Court notes that on August 31, 2009, Ms. Persaud withdrew her pending motions (Doc. 245).  Seeing as no other defendants have joined in this motion, the Court therefore finds that her Motion to Release Lien on Home (Doc. 192) is MOOT.

**Ms. Persaud's Motion *In Limine* To Exclude Co-Conspirator Hearsay (Doc. 188)**

Although Ms. Persaud withdrew her motions on August 31, 2009, Mr. Renneisen has joined in her Motion *In Limine* to Exclude Co-Conspirator Hearsay (Doc. 188).  Therefore, the Court will consider it.

Mr. Renneisen moves *in limine* to exclude any references to or the admission into evidence the statements of all alleged co-conspirators at trial and requests a pretrial hearing (James Hearing) to determine the admissibility of co-conspirator hearsay.  Movant anticipates, from the indictment and discovery so far, that the Government will reference and offer into evidence at trial out-of-court statements alleged to have been made by co-conspirators through the testimony of other witnesses under the Co-conspirator exception to the hearsay bar in Federal Rule of Evidence 801(d)(2)(E).

Movant submits that the Government will be unable to meet the strict foundational requirements for admitting such statements and in order to avoid the prejudice which would occur if the Government proffered its foundation at trial, she requests a *James* hearing be

conducted pretrial to determine the admissibility of any alleged co-conspirator statements.

The Government has filed a response stating that it will present the necessary foundation evidence to establish the conspiracies alleged in the indictment at the Motion hearing set for August 31, 2009. The Government agrees that this foundation evidence should be presented at a *James* Hearing.

Rules & Authority

Federal Rules of Evidence prohibit the admission of hearsay, with limited exceptions. Fed. R. Evid. 802.

The rules define classes of statements as nonhearsay, and thus not subject to the hearsay bar, including a "statement by a coconspirator of a party during the course and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E).

Co-conspirator hearsay is only properly admissible if the trial court determines that: (1) a conspiracy is proven by a preponderance of the evidence; (2) the declarant and the defendant were both members of the conspiracy; and (3) the statements were made in the course and furtherance of the conspiracy. *United States v. Powell,* 982 F.2d 1422, 1432 (10th Cir. 1992).

The party seeking to introduce hearsay testimony under the co-conspirator exception bears the burden of proving the relevant preliminary facts. *United States v. Perez,* 989 F.2d 1574, 1580 (10th Cir. 1993)(en banc).

In determining the existence of the underlying conspiracy, the trial court may consider evidence of the hearsay statements themselves. *Bourjaily v. United States,* 483 U.S. 171, 181 (1987).

However, the Tenth Circuit also requires that there be "some independent evidence

linking the defendant to the conspiracy." *United States v. Owens,* 70 F.3d 1118, 1125 (10th Cir. 1995); *see also* Fed. R. Evid. 801(d)(2) ("The contents of the statement shall be considered but are not alone sufficient to establish...the existence of the conspiracy and the participation therein of the declarant and the party against whom the statement is offered under subdivision (E).")

In *United States v. James,* 590 F.2d 575 (5th Cir. 1979), the Fifth Circuit set forth the preferred order of proof in establishing the foundational requirements of the co-conspirator hearsay exception. Under *James,* when the government proffers an alleged co-conspirator statement, the court should require the government to prove the alleged conspiracy and connection of the defendant with it before admitting the proffered declarations of a co-conspirator before the jury. *Id.* at 582.

"The strongly preferred order of proof in determining the admissibility of an alleged coconspirator statement is first to hold a '*James* hearing' ...outside the presence of the jury to determine by a preponderance of the evidence the existence of a predicate conspiracy...The reason for this preference is that if the court provisionally admits a statement with the idea that the statement and other evidence will later 'connect up' showing the existence of a predicate conspiracy, there is a risk of undue prejudice if in the end the evidence does not in fact 'connect up.'" *United States v. Urena,* 27 F.3d 1487, 1490-91 (10th Cir.), *cert. Denied,* 413 U.S. 977 (1994).

Conclusion

At the *James* Hearing, the parties agreed to allow the Government to proceed by proffer. The Government's Exhibit 1-18 was admitted for the purposes of this hearing without objection. In accordance with *United States v. Urena,* the Court required the government to prove the

16

alleged conspiracy and connect the defendants with it.  The Court finds that the Government has met its burden of proving the conspiracy by a preponderance of the evidence.  In addition, the evidence connects each of the defendants with the conspiracy.    The Court therefore finds, in accordance with Federal Rule of Evidence 801(d)(2)(E) that the statements made by the declarants, as members of the conspiracy, and made in furtherance of the conspiracy shall be admissible.

Specifically, the statements in Exhibit 1-18 made by the declarants in furtherance of the conspiracy will be admissible as an exception to the hearsay rule as co-conspirator hearsay.  The Court finds that the conspiracy has been proven by a preponderance of the evidence and that these statements were made by members of the conspiracy.  Finally, the Court finds that these statements were made in furtherance of the conspiracy.

One other specific statement identified by the Government was Mr. Hicks' statement to Nathan Yahraus after informing Yahraus that Hicks intended to use him as a reference.  When Yahraus refused to give Hicks his telephone number because he and John Persaud had gone to prison for that before, Mr. Hicks replied that, "John and I do it all the time."  The Court has already found that a conspiracy has been proven by a preponderance of the evidence.  Further, the Court finds that this statement was made in furtherance of the conspiracy–by attempting to recruit Yahraus to serve as a reference.  It will be admitted pursuant to Federal Rule of Evidence 801(d)(2)(E).

The Government has agreed to submit any other potential co-conspirator statements to the Court prior to the witness taking the stand.  The Court reserves the right to rule on those statements at the appropriate time.

17

**Mr. Renneisen, and Mr. Persaud's Motion to Suppress Confession/Admissions and Request for Evidentiary Hearing (Doc. 197)**

Mr. Persaud moves for an order suppressing any statements he gave to government agents and all leads and information derived therefrom on the grounds that they were given involuntarily as the product of deception and/or misrepresentation.  Mr. Persaud also requests and evidentiary hearing on the motion and the opportunity for oral argument pursuant to 18 U.S.C. § 3501.

Mr. Persaud contends that agents of the government were contacting customers of PBS Global (PBS) in August 2005, and PBS sought to determine the nature of the contacts.  Mr. Persaud contends that the facts are as follows:

- Agent Ronald Emmot of the US Secret Service informed the attorney for PBS that he was investigating Shaun Smoker and Andrew Wang and requested the assistance of PBS and its personnel.

- "On numerous occasions" John Benford, the attorney for PBS, communicated with Agent Emmot in writing and orally as well as orally with government prosecutors and provided information to them and confirmed that his client, PBS, and its personnel were not targets of the investigation.

- After these assurances, Mr. Benford permitted his clients to be interviewed by the Secret Service Agents on January 25, 2006 without Miranda warnings.

- Mr. Persaud contends that unbeknownst to him or Mr. Benford, the Secret Service and/or government prosecutors had previously identified PBS, Mr. Persaud, and

18

defendants other than Mr. Smoker and Mr. Wang as subjects and/or targets of the investigation long before the statement of Mr. Persaud on January 26, 2006.  Mr. Persaud submits that this fact was communicated to witnesses and other third parties prior to January 25, 2006.

Mr. Persaud contends that the information was obtained in this investigation by means of deception which rises to a level which makes the statements elicited involuntary.  Further, Mr. Persaud submits that the action should be dismissed, or alternatively, any and all information so obtained should be suppressed as well as all evidence derived there from as fruit of the poisonous tree.

The Government has filed a response (Doc. 232) to Mr. Persaud's Motion to Suppress and denies that the interview was the result of any deception on its part.  The Government submits that at the *Jackson v. Denno* hearing on August 31, 2009, it will present evidence to establish the defendant knowingly and voluntarily agreed to be interviewed by federal law enforcement officials.

The Government contends that at the time of Mr. Persaud's interview, the targets of the investigation were Mr. Wang and Mr. Smoker, and that he was interviewed to obtain information about the activities of Mr. Wang and Mr. Smoker.  The Government submits that it was not until after the interviews that Mr. Persaud was identified as a target of the investigation and is prepared to present further evidence at the hearing to support this claim.

Additionally, the Government contends that <u>even if</u>  Mr. Persaud was the target of the investigation on the date of his interview (although the Government does not agree that he was) this does not require suppression of the interview.  The Government submits the following in

19

support of this assertion:

- The interview process was initiated by corporate counsel for PBS, Mr. Benford, who invited the Secret Service to come to Flordia to interview the employees of PBS.

- Mr. Persaud's interview took place in the corporate offices of PBS and in the presence of corporate counsel.

- Neither Mr. Persaud or Mr. Benford claim that Mr. Persaud did not understand the questions being posed, was intimidated by the questioners, lacked the mental capacity to refuse to answer any of the questions, was obviously ill or overly tired during the interview, or that Mr.. Persaud was misled as to why he was being asked questions unrelated to Mr. Wang and Mr. Smoker.

- The agents did not affirmatively mislead Mr. Persaud about the true nature of their investigation.

- In August 2005, Mr. Persaud, through Mr. Benford, <u>offered</u> to be interviewed.

The Government therefore submits that any deception (which is denied) was not material in Mr. Persaud's decision to be interviewed and that decision was voluntary.

<u>Rules & Authority</u>

When a defendant raises the issue of the voluntariness of a confession, 18 U.S.C. §3501(a) requires a hearing on the issue.  18 U.S.C. §3501(a) codifies the constitutional requirement for a hearing on the voluntariness of a defendant's confession announced by the United States Supreme Court in *Jackson v. Denno,* 378 U.S. 368 (1964).  A confession is "any confession of guilt of any criminal offense or any self-incriminating statement made or given

orally or in writing."  18 U.S.C. §3501(e).

"The Government bears the burden of showing, by a preponderance of the evidence, that a confession is voluntary. *See Missouri v. Seibert,* 542 U.S. 600, 608 n.1... (2004)."  *U.S. v. Lopez,* 437 F.3d 1059, 1063 (10th Cir. 2006).

The rules of evidence applicable in criminal jury trials do not govern at hearings before a judge to determine pre-trial evidentiary matters, such as the admissibility of evidence at trial. *See U.S. v. Merritt,* 695 F.2d 1263, 1270 (10th Cir. 1982).

"In *Jackson v. Denno,* the Surpeme Court held that 'a defendant in a criminal case is deprived of due process of law if his conviction is founded, in whole or in part, upon an involuntary confession, without regard for the truth or falsity of the confession, and even though there is ample evidence aside from the confession to support the conviction.' 378 U.S. 368, 376 (1964)."  *United States v. Dowell*, 430 F.3d 1100, 1106 (10th Cir. 2005).

To suppress the statements given in the interviews, it must be shown that, taking into account the totality of the circumstances, the statements were involuntary in that the defendant's will was overborne.  *Culombe v. Connecticut,* 367 U.S. 568, 602 (1961).

"Coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary'."  *Colorado v. Connelly,* 479 U.S. 157, 167 (1986).  "In other words, the police must somehow overreach by exploiting a weakness or condition known to exist." *United States v. Robertson,* 19 F.3d 1318, 1321 (10th Cir.), *cert. denied,* 513 U.S. 906 (1994).  A statement is coerced or involuntary if the action of the "law enforcement officials was such as to overcome the will to resist and bring about a confession not freely self-determined."  *Rogers v. Richmond,* 365 U.S. 534, 544 (1961).

Voluntariness is determined from the totality of the circumstances including the age, education and intelligence of the accused, the length of detention and questioning, the use of a *Miranda* warning, and the use of any physical punishment. *Schneckloth v. Bustamonte,* 412 U.S. 218, 226 (1973). Misrepresentations are relevant to the voluntariness determination and must be considered along with other evidence. *See Frazier v. Cupp,* 394 U.S. 731, 739 (1969).

A "defendant must produce clear and convincing evidence that the agents affirmatively mislead him as to the true nature of their investigation. Defendant must also prove that the misinformation was material in his decision to speak with the agents. Simple failure to inform defendant that he was the subject of the investigation, or that the investigation was criminal in nature, does not amount to affirmative deceit unless defendant inquired about the nature of the investigation and the agents' failure to respond was intended to mislead." *United States v. Erekson,* 70 F.3d 1153, 1157-58 (10th Cir. 1995)(emphasis added, internal citations omitted).

Conclusion

Upon review of the testimony presented at the hearing on the Motion to Suppress, oral arguments, and briefs submitted, the Court finds that the Government has met its burden of showing the confession was voluntary by a preponderance of the evidence. In consideration of the totality of the circumstances, including that the defendants, Mr. Persaud and Mr. Renneisen both volunteered to be interviewed, the interviews were held at their place of business with the attorney for the company present, the defendants are of sufficient age and intelligence, and the lack of showing of coercive police activity, both of the defendants' statements were the product of their independent decision to speak with the agents.

Since the Government has met the burden of showing the confession was voluntary, the

defendant then must produce clear and convincing evidence that the agents *affirmatively* mislead him.  *U.S. v. Erekson,* 70 F.3d 1153, 1157-58 (10th Cir. 1995).  Misrepresentations are relevant to the voluntariness determination and must be considered as part of the totality of the circumstances.  *See, Frazier v. Cupp,* 394 U.S. 731, 739 (1969).   In the case at hand, the defendants have failed to produce clear and convincing evidence that the agents affirmatively mislead him.  In fact, when the agents testified under oath, they stated that they do not recall the Mr. Persaud or Mr. Renneisen ever specifically asking if he was a target or suspect of the investigation.  Further, the agents testified that at the point of the interview, the defendants had not been designated as such.   Without proof of a direct inquiry or evidence of an affirmative misrepresentation, the defendants falls short of their burden.

Therefore, the Motion to Suppress (Doc. 197) is DENIED.

## Government's Motion in Limine (Doc. 225)

The Government seeks an order prohibiting Mr. Hicks from introducing evidence, commenting upon, or arguing that this Court lacks Article III jurisdiction, that Title 18 of the United States Code is invalid, or that the defendant is being improperly detained.  The Government contends that Mr. Hicks has made lengthy, disjointed, and repeated legal arguments:

- challenging the validity of this Court's jurisdiction;

- claiming that Title 18 of the U.S. Code is invalid due to lack of Congressional quorum and other reasons; and

- that he has been unlawfully detained.

The Government points out that this Court has previously informed Mr. Hicks at the Status

Conference on June 29, 2009, that these arguments are frivolous and without merit and that Mr. Hicks will not be allowed to present evidence regarding these assertions.  The Government submits that this motion has been filed to formalize their opposition to Mr. Hicks introducing any evidence on these frivolous defenses.

Rules & Authority

When there is no evidence to support a defense, it is appropriate to preclude it as a matter of law.  *See, U.S. v. Kabat,* 797 F.2d 580, 591 (8th Cir. 1986), *cert. denied,* 481 U.S. 1030 (1987). In *Cheek v. United States,* the Supreme Court faced a situation in which the defendant argued that he had a good faith belief that the "tax laws were being unconstitutionally enforced."  498 U.S. 192, 195-96 (1991).  The Court held that "in a case like this, a defendant's views about the validity of the tax statutes are irrelevant to the issue of willfulness and need not be heard by the jury, and, if they are, an instruction to disregard them would be proper."  *Id.,* at 206.  The *Cheek* Court determined that Mr. Cheek could not claim to have a good faith belief in the invalidity of the Internal Revenue Code because a study of the law would have revealed the frivolous nature of his arguments.  *Id.  See also, U.S. v. Hariston,* 819 F.2d 971, 973 (10th Cir. 1987).

Conclusion

The Court finds that under the applicable law and in accordance with its previous rulings, Mr. Hicks will be prohibited from making arguments regarding irrelevant issues, including the Uniform Commercial Code and the invalidity of Title 18.  In accordance with the holding in *Cheek v. U.S.,* this Court determined that Mr. Hicks cannot claim to have a good faith belief in the invalidity of Title 18 because a study of the law would reveal the frivolous nature of his arguments.  Therefore, he will precluded from making such irrelevant arguments at trial.

24

The Government's Motion *in Limine* (Doc. 225) is GRANTED.

**Government's Notice of 404(b) Evidence (Doc. 179)**

The Government has filed it's notice of intent to introduce the following evidence of other crimes and civil wrongs, pursuant to Federal Rule of Criminal Procedure 404(b):

As to Mr. Persaud:

- Issuance of a $50,000 insufficient funds check to Mandalay Bay Casino, on or about March 5, 2008

- Issuance of a $30,000 insufficient funds check to Harrah's (New Orleans), on or about February 1, 2008

- Issuance of a $20,000 insufficient funds check to Borgata Hotel Casino, on or about October 29, 2007

- Bank of America cashier's check, #3242374, in the amount of $30,000 drawn upon the account of PBS, on or about March 4, 2004

- Bank of America cashier's check, #1472264, in the amount of $30,000 drawn upon the account of PBS, on or about December 8, 2003

- Bank of America cashier's check, #2458734, in the amount of $30,000 drawn upon the account of PBS, on or about November 1, 2003

- Failure to report personal gambling losses, paid by PBS, as income on Federal Income Tax Return

- Use of Billy Mitchell's name to:

  - Purchase a condominium

  - Purchase a computer

- •     Obtain a telephone number in the name of Billy Mitchell

- •     Apply for various credit cards

- •     Obtain a Florida electric company account

- •     Obtain a home shopping network account

- •     Use of the name "John Kashmere" while John Persaud was operating a business known as Business Buyer's Consortium

As to Brian P. Renneisen:

- •     Issuance of a $2,000 insufficient funds check to Bellagio Casino, on or about January 1, 2008

- •     Bank of America cashier's check, #3242373, in the amount of $20,000, drawn on the account of PBS, on or about March 9, 2004

- •     Bank of America cashier's check, #2458735, in the amount of $20,000, drawn on the account of PBS, on or about November 1, 2003

- •     Failure to report personal gambling losses paid by PBS as income on Federal Income Tax Return.

### *Mr. Persaud's Objection to Government's 404(b) Notice (Doc. 206)*

Mr. Persaud has filed an objection to all "so-called evidence of other crimes and civil wrongs" contained in the Government's Notice. Mr. Persaud moves, in limine, to exclude all evidence identified in the notice and to exclude all evidence of prior convictions of Mr. Persaud.

Mr. Persaud contends that the probative value of all such evidence is substantially outweighed by its potential for unfair prejudice. Mr. Persaud submits that the Government has not provided sufficient information to justify the admission of the evidence identified in the

notice.

Mr. Persaud further contends that in the event that a separate trial is ordered on Count 75, then evidence of prior convictions should be excluded.

The Government has filed a response to Mr. Persaud's objection and submits that it does not intend to introduce evidence regarding the insufficient funds checks in its case-in-chief, but may cross-examine Mr. Persaud about this check if he chooses to testify.

With regard to the failure to report gambling payments on federal income taxes, the Government submits that such evidence is admissible because it is evidence of intent, plan, knowledge and absence of mistake or accident.   In support, the Government contends the following:

- Mr. Persaud is charged with engaging in a conspiracy to launder money, as well as being a principal or aider and abettor in the laundering of money.

- The money laundered was money that was fraudulently obtained and deposited into various accounts of PBS, Global.

- After fraudulently obtained funds were deposited into these accounts, the defendants conspired to conceal the source and true ownership of the funds by having PBS deposit money earned by Mr. Persaud, into various bank accounts of corporations owned by Ms. Persaud.

Finally, the Government contends that the evidence relating to PBS paying the gambling debts of Mr. Persaud is proper because it shows Mr. Persaud's intent, plan, knowledge, and absence of mistake or accident.

The Government submits that given the nature of the allegations against the defendant

the payment of Mr. Persaud's gambling debt by PBS and his subsequent failure to report these payments as income is actually evidence which should be considered part of the *res gestae* of the crime, and not subject to 404(b).

With regard to the cashier's checks drawn on PBS's account by Mr. Persaud, the Government submits that such evidence is evidence of his intent, knowledge, preparation and plan.

The Government contends that the use of false names, including Billy Mitchell and John Kashmere, is evidence of his intent and knowledge, as well as preparation and plans to participate in the false reference scheme.  The Government submits that this is also *res gestae* evidence and not subject to 404(b).

### *Ms. Persaud's Motion in Limine to Exclude Evidence of Unrelated, Irrelevant Alleged Acts (Doc. 190)*

As per her Withdrawal of her pending motions in Doc. 245, Ms. Persaud has withdrawn this Motion in Limine.   The Court therefore finds that Doc. 190 is MOOT.

### *Mr. Renneisen's Response to 404(b) Notice (Doc. 204) and Objection (Doc. 205)*

Mr. Renneisen has filed a response to the Government's Notice of 404(b) Evidence (Doc. 179) stating that other than Doc. 179, he has received no other notice that the government intends to use any evidence under 404(b) at trial.

Mr. Renneisen has filed an objection to the government's notice of 404(b) evidence and motion in limine (Doc. 205) and seeks an order excluding from admission into evidence or mention before the jury or prospective jurors that acts alleged in the Government's notice.

Mr. Renneisen contends that other than an allegation that he "may have failed to report

28

the possible corporate payment of alleged personal gambling debts as income" the Government's

Notice does not contain information that would make the other statements "a civil wrong."  Mr.

Renneisen submits that the Government's Notice does not allege an intent to defraud, so the

mere fact of being overdrawn on an account is not a crime, and further, that if the check was paid

after notification of the insufficiency, it is hardly a civil wrong.

      With regard to the cashier's checks Mr. Renneisen contends that there is nothing criminal

about having a cashier's check drawn on a corporate account.  He submits that until the

Government provides specific information as to how it believes the allegations contained in the

Notice constitute criminal acts or civil wrongs evidence of such allegations should be excluded

from admission into evidence.

      The Government has filed a response to Mr. Renneisen's objections. (Doc. 226)  With

regard to the insufficient funds check, the Government submits that it does not intend to

introduce evidence regarding it in its case-in-chief, but may cross-examine the defendant if he

testifies.

      With regard to the gambling debts, the Government submits the following:

- Ms. Renneisen is charged with engaging in a conspiracy to launder money, as well as being a principal or aider and abettor in the laundering of money

- The money laundered was money which was fraudulently obtained and deposited into the various accounts of PBS, Global.

- After the fraudulently obtained funds were deposited into PBS Global's bank accounts, the defendants conspired to conceal the source and true ownership of the funds by having PBS Global deposit money earned by Mr. Renneisen, into

various bank accounts of corporations owned by Mr. Renneisen as well as his

personal bank accounts.

• The evidence relating to PBS paying the gambling debts of Mr. Renneisen is

proper because it shows his intent, plan, knowledge and absence of mistake or

accident.

The Government contends that given the nature of the charges, the payment of Mr. Renneisen's

gambling debts by PBS and his subsequent failure to report these payments as income is actually

evidence which should be considered part of the *res gestae* of the crime, and not subject to

404(b).

With regard to the cashier's checks, the Government submits that such evidence is

evidence of Mr. Renneisen's intent, knowledge, preparation, and plan.  Additionally, the

Government contends that such evidence should be considered part of the *res gestae* of the crime

and not subject to 404(b).

<u>Rules & Authority</u>

Evidence of "other crimes, wrongs, or acts is not admissible to prove the character of a

person in order to show action in conformity therewith."  Fed. R. Evid. 404(b).  "Showing that a

man is generally bad has never been under our system allowable.  The defendant has a right to be

tried on the truth of the specific charge contained in the Indictment."  *United States v. Hogue,*

458 F.2d 201, 204 (10th Cir. 1972).

Evidence of prior crimes may be admissible if offered as "proof of motive, opportunity,

intent, preparation, plan, knowledge, identity, or absence of mistake or accient..."  Fed. R. Evid.

404(b).  "(1) the evidence must be offered for a proper purpose; (2) the evidence must be

relevant; (3) the trial court must make a Rule 403 determination of whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice; and (4) pursuant to Fed. R. Evid. 105, the trial court shall, upon request, instruct the jury that the evidence of similar acts is to be considered only for the proper purpose for which it was admitted." *United States v. Poole,* 929 F.2d 1476, 1481 (10th Cir. 1991), *following Huddleston v. United States,* 485 U.S. 681 (1988).

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed. R. Evid. 403.   Proffered specific acts evidence is excludable if it would cause undue delay or lead to collateral mini trials. *See United States v. Talamante,* 981 F.2d 1153, 1157, n.5 (10th Cir. 1992).

"[T]he government should 'articulate precisely the evidentiary hypothesis by which a fact of consequence may be inferred from the evidence of other acts.'" *United States v. Robinson,* 978 F.2d 1554, 1559 (10th Cir. 1992), *cert. denied,* 507 U.S. 1034 (1993) (*quoting United States v. Kendall,* 766 F.2d 1426, 1436 (10th Cir. 1985), *cert. denied,* 474 U.S. 1081 (1986)).  Weak circumstantial evidence of prior bad acts carries with it an "inherent danger of prejudice to the defendant.  The government cannot conduct a mini-trial on act the defendant was never charged with" under the guise of exceptions to the rule generally excluding prior bad acts. *United States v. Temple,* 862 F.2d 821, 824 (10th Cir. 1988).

Conclusion

The Court has taken the matter of the admission of specific 404(b) evidence under advisement.  The Court DEFERS ruling on this issue and intends to rule on such evidence as it

comes up at trial.

**Government's Request for Judicial Notice (Doc. 238)**

The government has requested that the Court take judicial notice of the following adjudicative facts:

- On August 13, 1997, Mr. Persaud pled guilty to 5 counts of wire fraud in violation of 18 USC 1343 and 2 in the Western District of Kentucky.

- On the same day, Mr. Persaud pled guilty to 3 counts of money laundering in violation of 18 USC 1957.

- The United States District Court for the Western District of Kentucky accepted Mr. Persaud's guilty plea and sentenced him to 27 months of incarceration, 3 years of supervised release, and restitution of $1,713,923.

**Government's Amended Request for Judicial Notice (Doc. 244)**

The Government has filed an amended request for judicial notice which includes a request that the Court take judicial notice of additional facts including:

- On June 18, 1997, a Grand Jury sitting in the Western District of Kentucky indicted John R. Persaud, the defendant herein, on five counts of wire fraud (Counts 1 through 5 of the indictment), four counts of money laundering (Counts 6 through 9 of the indictment), with Count 10 of the indictment seeking forfeiture.

- The indictment filed in the Western District of Kentucky charging Mr. Persaud, with five counts of wire fraud, four counts of money laundering and one count seeking forfeiture;

- The plea agreement between Mr. Persaud, and the United States Attorney's Office

32

for the Western District of Kentucky, in which Mr. Persaud agreed to plead guilty to Counts 1 through 5 and 6, 8 and 9 of the indictment;

• The Judgment in a Criminal Case, filed in *United States v. John Persaud,* Western District of Kentucky, Case No. 3:97 CR-49, in which the court found Mr. Persaud, guilty of Counts 1 through 5 (wire fraud), Counts 6, 8, and 9 (money laundering) and ordering him to make restitution to the victims of his criminal activity in the amount of $1,713,923.00.

Conclusion

At the Motion Hearing on August 31, 2009, counsel indicated that they would attempt to come to an agreement on the Government's Request for Judicial Notice and the Government's Amended Request for Judicial Notice.  The Court will therefore DEFER ruling on these requests (Docs. 238 & 244) until the parties have the opportunity to reach an agreement.  Any such agreement shall be submitted to the Court in writing prior to the Status Conference scheduled for September 10, 2009 at 10:00 a.m.

**Government's Motion to Compel Discovery (Doc. 242)**

The Government moves the Court for an order compelling the defendants to comply with the Court's order for reciprocal discovery.  Alternatively, the government seeks an order prohibiting the defendants' use of evidence if discovery is not provided to the government.  The government contends:

• On September 17, 2007, the defendants were indicted in a multi-count indictment charging the defendants with conspiracy to commit wire fraud, wire fraud, mail fraud, money laundering conspiracy, and seeking forfeiture from each of the

defendants.

- On November 9, 2007, the Court ordered the Government to comply with Rules 12(d)(2) and 16, and to produce its *Brady* and *Giglio* material by December 9, 2007, and the defendants were to provide reciprocal discovery 14 days thereafter.

- The Government began providing the defendants with discovery on November 9, 2007 and has continued to do so as the discovery becomes available to them.

- At the time of the filing of the motion, <u>none</u> of the defendants had produced any reciprocal discovery despite the passing of nearly 21 months since the government's initial production.

- On August 24, 2009, the Government heard for the first time that the defendants may have evidence that should have been produced pursuant to the Court's order.

Accordingly, the Government requests the Court order the defendants comply forthwith with the terms and conditions of the Scheduling Order of November 9, 2007 regarding: (1) Rule 16 materials; and (2) Rule 26.2 materials.

Alternatively, if the defendants continue to fail to comply with duties of reciprocal discovery, the government requests the Court order alternative sanctions, including, but not limited to, prohibiting the defendant from calling witnesses to testify at trial and prohibiting that defendant from introducing into evidence those documents which the government has not been provided copies.

<u>Rules & Authority</u>

In *Taylor v. Illinois,* the U.S. Supreme Court held that the court correctly excluded expert testimony as a sanction for defendant's violation of Rule 16 discovery.  484 U.S. 400, 414-16

34

(1988).  In *U.S. v. King*, the 5th Circuit held that the district court properly excluded alibi evidence not produced to government pursuant to reciprocity provisions of Rule 16.  703 F.2d 119, 125-26 (5th Cir. 1983).

Conclusion

At the Motion Hearing on August 31, 2009, counsel indicated that they would attempt to come to an agreement on the Government's Motion to Compel Discovery (Doc. 242).  The Court will therefore DEFER ruling on these requests until the parties have the opportunity to reach an agreement.  Any such agreement shall be submitted to the Court in writing prior to the Status Conference scheduled for September 10, 2009 at 10:00 a.m.

IT IS HEREBY ORDERED THAT the Court  DEFERS ruling on Docs. 179,  200, 202, 238, 242, and 244;  Docs. 192, 198, 199, and 208 are MOOT;  Docs. 191, 201, 225 are GRANTED;  Docs. 189, 197, and 203 are DENIED;   Doc. 188 is DENIED in part, and DEFERRED in part.

IT IS SO ORDERED this 4th day of September, 2009 at Wichita, Kansas.

s/ Wesley E. Brown

U.S. Senior District Judge

35